**OLYMPIC CAPITAL CORPORATION,**
a Texas Corporation, Plaintiff,

v.

**Joseph E. NEWMAN and Newman Capital Corporation, a Colorado Corporation, Defendants.**

**Civ. No. 67–46.**

United States District Court
C. D. California.

Nov. 14, 1967.

Schoichet & Rifkind and Howard D. Sterling, Beverly Hills, Cal., for plaintiff.

James L. Hoxie, Los Angeles, Cal., Robert E. Holland, Denver, Colo., and Munger, Tolles, Hills & Rickershauser, Carla A. Hills, Los Angeles, Cal., for defendants.

## MEMORANDUM AND ORDER

REAL, District Judge.

The Small Business Administration as the receiver of defendant, NEWMAN CAPITAL CORPORATION, a Colorado corporation moves: (1) to dismiss the action as to defendant NEWMAN CAPITAL CORPORATION on the ground that this court is not the proper forum in that defendant NEWMAN CAPITAL CORPORATION is not properly found in this District; (2) to dismiss as to defendant NEWMAN CAPITAL CORPORATION on the ground that the complaint does not state a claim upon which relief can be granted against defendant NEWMAN CAPITAL CORPORATION; and (3) in the alternative, for Summary Judgment since the pleadings and affidavits show that there is no genuine issue as to any material fact; and (4) for release and delivery to the Small Business Administration of any and all sums which have been paid into court for the account of defendant NEWMAN CAPITAL CORPORATION.

Defendant JOSEPH E. NEWMAN moves: (1) to dismiss the Second and Third Counts of the Amended Complaint pursuant to Rule 12(b) (1) of the Federal Rules of Civil Procedure as to defendant JOSEPH E. NEWMAN on the ground that this court lacks jurisdiction over the subject matter under the provisions of §§ 17(a), 22 of the Securities Act of 1933, 15 U.S.C.A. §§ 77q, 77v; (2) to dismiss the Second and Third Counts of the Amended Complaint pursuant to Rule 12(b) (3) of the Federal Rules of Civil Procedure as to defendant JOSEPH E. NEWMAN on the ground that venue is improper under the provisions of § 22 of the Securities Exchange Act of 1933 and § 27 of the Securities Exchange Act of 1934, 15 U.S.C.A. §§ 77v, 78aa; (3) to Quash Service of Summons and dismiss the First, Fourth, and Fifth Counts of the Amended Complaint for Money Judgment pursuant to Rule 12(b) (2) and 12(b) (5) of the Federal Rules of Civil Procedure on the ground the court lacks jurisdiction over the person of defendant JOSEPH E. NEW-

MAN and insufficiency of service of process upon defendant JOSEPH E. NEWMAN pursuant to Rule 4(f) of the Federal Rules of Civil Procedure; (4) to dismiss the Fourth Count of the Amended Complaint pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure on the ground of failure to state a claim upon which relief can be granted against defendant in that plaintiff has no standing to enforce Title 18 U.S.C.A. § 1014 on behalf of the United States; and (5) alternatively to transfer the Amended Complaint pursuant to Title 28 § 1404(a) for the convenience of the parties and witnesses in the interest of justice.

Plaintiff OLYMPIC CAPITAL CORPORATION has filed separate memoranda of Points and Authorities and affidavits as to each of the motions of defendants. Since all present common questions, they will be considered as though presented in one pleading.

## BACKGROUND

This is an action commenced by plaintiff OLYMPIC CAPITAL CORPORATION, a Texas Corporation, with its principal place of business in California against defendants JOSEPH E. NEWMAN, a citizen and resident of Colorado, and NEWMAN CAPITAL CORPORATION, a Colorado Corporation, with its principal place of business in Colorado.

The claim of plaintiff is in five counts, arising out of basically a single transaction, i. e., a debt evidenced by a Promissory Note executed by defendant JOSEPH E. NEWMAN, individually, on or about May 1, 1963. The First Count alleges a suit upon the promissory note executed by defendant JOSEPH E. NEWMAN May 1, 1963, and alleges that defendant JOSEPH E. NEWMAN and defendant NEWMAN CAPITAL CORPORATION have such a unity of interest that the "individuality and separateness of defendant NEWMAN and defendant CAPITAL has ceased" (alter ego).

Counts Two and Three purport to allege causes of action under the Securities Act of 1933 (15 U.S.C.A. § 77v) and the Securities Exchange Act of 1934 (15 U.S. C.A. § 78aa).

Count Four purports to allege a cause of action pursuant to Title 18 U.S.C.A. § 1014.

The Fifth Count purports to allege a common law suit for fraud.

Jurisdiction of Counts One, Four and Five is predicated upon diversity of citizenship. Counts Two and Three ground their jurisdiction in the respective Securities Acts of 1933 and 1934.

Defendant NEWMAN CAPITAL CORPORATION has been placed in receivership by the United States District Court for the District of Colorado and the Small Business Administration is the duly appointed receiver.

## STATUS OF PLAINTIFF

■ Defendant NEWMAN CAPITAL CORPORATION questions the right of plaintiff to bring this suit because of alleged violations of the Small Business Investment Company Act of 1958. These alleged violations are that plaintiff changed its name and principal place of business without the prior approval of the Administrator.

Plaintiff denies any violation on the ground that application was made for change of name and principal place of business and though no express approval of the Administrator has been forthcoming, approval can be found in the Regulations of the Small Business Administration by the failure of notification to the contrary within sixty (60) days after receipt of an application.

Title 15 U.S.C.A. § 681 provides in its pertinent part:

> "§ 681. *Organization — Incorporation and charter under State law, period of succession; area of operations*
>
> (a) A small business investment company shall be an incorporated body, organized and chartered under State law solely for the purpose of performing the functions and conducting the

activities contemplated under this subchapter * * *. The area in which the company is to conduct its operation, and the establishment of branch offices or agencies (if authorized by the articles of incorporation), shall be subject to the approval of the Administration.

*Articles of incorporation; approval*

(b) The articles of incorporation of any small business investment company shall specify * * * the name assumed by such company, the area or areas in which its operations are to be carried on, * * *. Such articles and any amendments thereto adopted from time to time shall be subject to the approval of the Administration.

*Forwarding of articles for approval or disapproval; matters considered; issuance of license*

(c) The articles of incorporation and amendments thereto shall be forwarded to the Administration for consideration and approval or disapproval. * * * [I]f it approves the company's articles of incorporation, the Administration may in its discretion approve the company to operate under the provisions of this chapter and issue the company a license for such operation."

At the outset it appears that the statute contemplates licensing of a corporation which must first find its existence under State law. Clearly the provisions of Title 15 § 681 do not contemplate the creation and maintenance of the corporate entity but only the licensing of a corporate entity created under State law as a small business investment company. It is State law that governs its creation and existence as the corporate entity with the capacity to sue and be sued.

Provisions for forfeiture of the license to do business as a Small Business Investment Company, once granted by the Administration, are found in Title 15 § 687 not fully quoted by counsel for the Small Business Administration herein. From the quoted language however it can be seen that violation or failure of compliance of the Act or regulations promulgated thereunder *may*, but does not necessarily, cause the forfeiture of the license. What is important is: How is that done? It is not automatic!

Title 15 U.S.C.A. § 687 provides in its pertinent part:

" § 687. *Operation and regulation of companies — Cooperation with banks and other financial institutions*

(a) * * *

(b) * * *

(c) * * *

(d) Should any small business investment company violate or fail to comply with any of the provisions of this Act or the regulations prescribed hereunder, all of its rights, privileges, franchises derived therefrom may thereby be forfeited. Before any such company shall be declared dissolved, or its rights, privileges, and franchises forfeited, any noncompliance with or violation of this Act shall be determined and adjudged by a court of the United States of competent jurisdiction * * *.

(e) * * * "

 The Administration has neither the power, nor the right to forfeit any license of a small business investment company licensed pursuant to the Small Business Investment Act of 1958, Title 15 U.S.C.A. §§ 661–696. That power is reserved specifically to "a court of the United States of competent jurisdiction." The Administration can, after hearing, suspend a license or issue a cease and desist order pursuant to Title 15 U.S.C.A. § 687a. None of the procedures which could in any manner affect plaintiff in the prosecution of its suit here have been instituted.

Further, the position of plaintiff appears well taken with reference to the regulations of the Small Business Administration itself. Under the circumstances the raising of an issue so clearly erroneous on behalf of defendant NEW-

MAN CAPITAL CORPORATION is completely without merit and frivolous.

## MOTION TO DISMISS

### 1. AS TO DEFENDANT NEWMAN CAPITAL CORPORATION

Defendant, NEWMAN CAPITAL CORPORATION, (hereinafter referred to as CAPITAL) was incorporated as a Small Business Investment Company under the laws of the State of Colorado on May 2, 1963, and licensed by the Small Business Administration on June 28, 1963. CAPITAL has at all times maintained its principal place of business in the State of Colorado.

Plaintiff claims jurisdiction over the person of CAPITAL by reason of:

(1) Securities Act of 1933 (15 U.S.C.A. § 77v) and Securities Act of 1934 (15 U.S.C.A. § 78aa) as to Counts Two and Three on the theory of aiding and abetting.

(2) Pendent Jurisdiction as to Counts One and Five on the theory of alter ego.

(3) Quasi-in-Rem jurisdiction as to Counts One, Four and Five on the theory of alter ego.

(a) JURISDICTION AND VENUE PURSUANT TO THE SECURITIES ACT OF 1933, 15 U.S.C.A. § 77v and THE SECURITIES ACT OF 1934, 15 U.S.C.A. § 78aa.

■ Jurisdiction must be distinguished from venue. In Neirbo Co. v. Bethlehem Shipbuilding Corp. (1939) 308 U.S. 165, at page 167, 60 S.Ct. 153 at page 154, 84 L.Ed. 167, the Supreme Court distinguishes in this manner:

"The jurisdiction of the federal courts—their power to adjudicate—is a grant of authority to them by Congress and thus beyond the scope of litigants to confer. But the locality of a lawsuit—the place where judicial authority may be exercised—though defined by legislation relates to the convenience of litigants and as such is subject to their disposition."

Title 15 U.S.C.A. § 77v provides in its pertinent part:

"§ 77v *Jurisdiction of offenses and suits*

(a) The district courts of the United States * * * shall have jurisdiction of offenses and violations under this subchapter and under the rules and regulations of the Commission in respect thereto * * *. Any such suit may be brought in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place, if the defendant participated therein * * *."

Title 15 U.S.C.A. § 78aa provides in its pertinent part:

"§ 78aa *Jurisdiction of offenses and suits*

The district courts of the United States * * * shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter on the rules and regulations thereunder. Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred. Any suit or action to enforce any liability or duty created * * * may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found. * * *"

■ It is clear from a reading of both §§ 77v and 78aa (supra) that jurisdiction is vested in "[t]he district courts of the United States." Though broadly stated in terms of subject matter jurisdiction there are limitations upon the place where the action may be brought. It may be commenced in (1) the district wherein the defendant is found, (2) the

district where the defendant lives or transacts business, (3) the district where the offer or sale took place, or (4) the district wherein any act or transaction constituting the violation occurred.

The pleadings, affidavits and papers filed herein concede that defendant CAPITAL is not found, reside or transact business within the Central District of California. Plaintiff offers this district as the district where the offer or sale took place and more particularly wherein "any act or transaction constituting the violation occurred." Since defendant CAPITAL did not in any direct capacity participate in the offer and sale of the promissory note executed by defendant JOSEPH E. NEWMAN, nor submit any allegedly false financial statements, the plaintiff relies upon a theory of aiding and abetting.

Plaintiff alleges in its Second Count that on or about May 1, 1963, defendant CAPITAL "sold to plaintiff out of the ordinary course of business a security" in violation of 15 U.S.C.A. § 77q,[1] Securities Act of 1933. Further allegations made concerning the submission of false financial statements and other reports in May, 1964, and April, 1965.

In Count Three plaintiff alleges that defendant CAPITAL engaged in acts violative of 17 C.F.R. § 240, 10b–5,[2] Securities & Exchange Commission Rule 10b–5 and 15 U.S.C.A. § 78j(b)[3] Securities Exchange Act of 1934 § 10(b) in submission of Financial Statement and Application containing untrue material facts and omitting material facts misleading plaintiff. However, the actual facts as elicited from the affidavits belie the plaintiff's position with regard to the Second and Third Counts. In these counts, plaintiff alleges violations which can properly be classified as violations of the Securities Acts in the "offer or sale" or "purchase or sale" of the alleged security transaction.

1. Title 15 U.S.C.A. § 77q provides in its pertinent part:
 "§ 77q. *Fraudulent interstate transactions*
 (a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—
 (1) to employ any device, scheme, or artifice to defraud, or
 (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
 (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.
 (b) * * *
 (c) * * *"

2. 17 Code of Federal Regulations § 240.-10b–5 provides:
 "§ 240.10b–5 *Employment of manipulative and deceptive devices*
 It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
 (a) To employ any device, scheme, or artifice to defraud,
 (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
 (c) To engage in any act, practice, or course of business which operates as a fraud or deceit upon any person,
 in connection with the purchase or sale of any security."

3. Title 15 U.S.C.A. § 78j(b) provides:
 "§ 78j *Manipulative and deceptive devices*
 It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or any facility of any national securities exchange—
 (a) * * *
 (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

The promissory note and the loan agreement indicate that the loan, upon which suit is now premised, was negotiated, executed and completed on or before May 1, 1963, a date when defendant CAPITAL was not in existence. Plaintiff would have the court extend the interpretation of "purchase or sale" and "offer or sale" to the alleged transactions of May 15, 1964, and April 20, 1965, with the suggestion that "venue under the Exchange Act is proper if one act in furtherance of the unlawful scheme is done in the forum district," Zorn v. Anderson, C.C.H. Federal Securities Law Reporter ¶ 91857 at 85940 (S.D.N.Y. 1966).

Title 15 U.S.C.A. § 77b defines the relevant terms as follows:

" § 77b. *Definitions*

When used in this subchapter, unless the context otherwise requires—

(1) * * *

(2) * * *

(3) The term 'sale' or 'sell' shall include every contract of sale or disposition of a security or interest in a security, for value. The term 'offer to sell,' 'offer for sale,' or 'offer' shall include every attempt or offer to dispose of, or soliciation of an offer to buy, a security or interest in a security, for value. * * *

(4) * * *

(5) * * *

(6) * * *

(7) * * *

(8) * * *

(9) * * *

(10) * * *

(11) * * *

(12) * * * "

■ That the giving of the promissory note in exchange for the personal loan made by plaintiff is a sale of a security within the meaning of the Securities Acts, Llanos v. United States (1953) 9 Cir., 206 F.2d 852 cert. denied 346 U.S. 923, 74 S.Ct. 310, 98 L.Ed. 417, is not questioned by any party herein. We are here concerned only with the scope of the "sale transaction." Here the evidence is without dispute that, except for the acts which might be attributable to both defendants (occurring at least a year after May 1, 1963), the transaction premising any cause of action for violation of the Securities Acts was completed before defendant CAPITAL had any actual or imputed capacity to perform any act, legal or illegal.

■ Courts, facing the problem of the scope of a sale transaction have uniformally held that when a seller in State S delivers a security to a buyer in State B, who sends or delivers a check to the seller in State S, the sale takes place in State B. 3 Loss, Security Regulations 2008. There can be no violation of the Securities Act unless three acts co-exist in relation to the transaction: (1) use of the mail or other instrumentality of interstate commerce; (2) purchase or sale of a security; and (3) use of a manipulative or deceptive device.

In Boone v. Baugh (1962) 8 Cir., 308 F.2d 711 at 714, the court states the principle which must be applied to the transaction presented herein when it says:

"The court was also fully justified in finding that the alleged fraudulent sale of securities was completed before the mail or commerce transactions disclosed by the evidence came into operation and that the use of the mails or commerce in no way contributed to the sale of the securities here involved, or the cancellation of the purchase price of such securities."

See also Hooper v. Mountain State Securities (1960) 282 F.2d 195 cert. denied 265 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693.

■ Assuming, arguendo, that "the district courts of the United States" have jurisdiction in the sense of the "power to adjudicate." The venue provisions of either 15 U.S.C.A. § 77v or 15 U.S.C.A. § 78aa give no vitality to the position of plaintiff insofar as it regards the Central District of California as the proper district within which to commence its ac-

## 654

tion against defendant CAPITAL. The only acts of defendants material to the consideration of violation of the Securities Acts alleged herein occurred in Colorado, Kansas, Oklahoma, or Texas and not in California.

### 2. AS TO DEFENDANT JOSEPH E. NEWMAN

(a) Under Rule 12(b) (1) [4] for lack of subject matter jurisdiction of the Second and Third Counts.

■ Defendant JOSEPH E. NEWMAN (hereinafter referred to as NEWMAN) applied to plaintiff for a loan of $60,000 sometime early in 1963. In connection with that application, defendant NEWMAN submitted to plaintiff Application for Financing Established Business and a financial statement. After the loan was made defendant submitted financial statements and other reports in May, 1964, and April, 1965. Plaintiff in its Second Count maintains that all of these documents (the application and financial statements of 1963 and the financial statements and reports of 1964 and 1965) were false and misleading in violation of the Securities Act of 1933, § 17(a), 15 U.S.C.A. § 77q.

Title 15 U.S.C.A. § 77v establishes the jurisdiction of the offenses contemplated in § 77q in the district courts of the United States but providing that the action may be brought in the district (1) where the defendant is found, (2) where the defendant is an inhabitant or transacts business, or (3) where the offer or sale took place.

The facts as presented by affidavits filed herein clearly show that all of the acts complained of in the Second Count which can be related to the "offer or sale" occurred either in Colorado, Oklahoma or Texas. Defendant NEWMAN can neither be found nor does he transact business within the Central District of California.

The Third Count alleging violation of the Securities Exchange Act of 1934 § 10(b), 17 C.F.R. § 240.10b–5, Securities & Exchange Commission Rule 10b–5 and 15 U.S.C.A. § 78j(b) and jurisdiction pursuant to Securities and Exchange Act of 1934 § 27, 15 U.S.C.A. § 78aa.

Certainly § 78aa broadens the venue aspect of violations of 15 U.S.C.A. § 78j (b) to the district wherein "any act or transaction constituting the violation occurred." But the conduct made violative of the Securities Act by § 78j(b) is the use or employment, in connection with the purchase *or sale*. As set forth herein the sale of the promissory note of defendant NEWMAN was *completed* as the culmination of negotiations and acts in Colorado, Oklahoma and Texas.

(b) Under Rule 12(b) (3) [5] for improper venue of the Second and Third Counts.

Since both §§ 78aa, 77v specifically provide for the venue of the Securities Act violations alleged by plaintiff it is clear that venue is most properly in the District of Colorado.

### PENDENT JURISDICTION AS TO COUNTS ONE AND FIVE

■ Counts One and Five allege what, in the absence of diversity of citizenship jurisdiction, would be cognizable only under State law. There is no claim

---

4. Federal Rules of Civil Procedure Rule 12(b) (1) provides in its pertinent part: "Rule 12. *Defenses and Objections— When and How Presented— By Pleading or Motion— Motion for Judgment on Pleadings*
 (a) * * *
 (b) How Presented. Every defense, in law or fact * * * shall be asserted in the responsive pleading * * *, except that the following defenses may at the option of the pleader be made

by motion: (1) lack of jurisdiction over the subject matter, * * *."

5. Federal Rules of Civil Procedure Rule 12 (b) (3) provides in its pertinent part:
 "(b) How Presented. Every defense, in law or fact * * * shall be asserted in the responsive pleading * * *, except that the following defenses may at the option of the pleader be made by motion (1) * * * (2) * * * (3) improper venue * * *."

or allegation of any separate ground of federal jurisdiction. Jurisdiction therefore must depend in Counts One and Five (absent diversity of citizenship) on the application of the doctrine of pendent jurisdiction as affected by alter ego in regard to the defendant CAPITAL.

As suggested by plaintiff there are uncontroverted facts supporting a true diversity of citizenship Title 28 U.S.C.A. § 1332 as between all defendants and the plaintiff herein. The controversy exceeds $10,000 and is between citizens of the State of Colorado and a citizen of the State of Texas. The applicability or inapplicability of the doctrine of pendent jurisdiction is therefore of no value to plaintiff and is not here considered as essential to a determination of the question of either jurisdiction or venue as between plaintiff and defendant CAPITAL.

### ALTER EGO THEORY

The Small Business Administration as the receiver of defendant CAPITAL contends in support of its motion to dismiss or alternatively for summary judgment that no liability can be imposed upon CAPITAL since CAPITAL was not a party to any transaction between plaintiff and defendant JOSEPH E. NEWMAN and has not otherwise assumed any personal obligations of defendant JOSEPH E. NEWMAN. Plaintiff contends that liability can and should be imposed upon defendant CAPITAL because "there is such a unity of interest and ownership between defendant NEWMAN and defendant CAPITAL that the individuality and separateness of defendant NEWMAN and defendant CAPITAL has ceased."

The proposed application of an alter ego theory or more accurately a disregard of the corporate entity theory in order to state a cause of action against defendant CAPITAL is entirely misplaced.

Plaintiff relies upon Hudson v. Wylie (1957 9th Cir.) 242 F.2d 435 cert. denied 355 U.S. 828, 78 S.Ct. 39, 2 L.Ed.2d 41 and interestingly enough the allegation of alter ego in plaintiff's complaint (supra) is similar to the consideration of the Conclusions of Law set forth at page 440 of the *Hudson* case (supra). But the *Hudson* case (supra) had under consideration a different situation than that presented here. The court in *Hudson* was concerned with disregarding the corporate entity to reach the individual by "declaring and decreeing that *Palmdale* was the alter ego of *Hudson.*" Plaintiff here would have the court disregard the entity of defendant JOSEPH E. NEWMAN to impose liability upon defendant CAPITAL, i. e., that defendant JOSEPH E. NEWMAN was a hollow shell controlled and dominated by defendant CAPITAL. The statement of such a contention makes patent the fallacy of the reasoning.

None of the cases cited by either party has any analogy to the requested action of the court here. The court has been able to find no situation in which the doctrine of alter ego has been applied to a fact situation such as it presented to the court in this case. Alter ego would appear to be limited to the situation where there is reason to *disregard a corporate entity* to reach individuals, it has no applicability in disregarding the existence of an individual to reach corporate assets.

Agency in terms of what may be called the "sole actor doctrine," General American Life Ins. Co. v. Anderson, 46 F.Supp. 189 modified 141 F.2d 898 cert. denied 323 U.S. 798, 65 S.Ct. 554, 89 L.Ed. 637, is not pleaded herein and it is most doubtful that the facts could support such an allegation.

### QUASI–IN–REM JURISDICTION

Plaintiff after filing suit herein caused a Writ of Attachment to issue from this court and attached property of defendant CAPITAL, viz., a promissory note owing to defendant CAPITAL.

Upon application made pursuant to California Code of Civil Procedure §§

412 [6] and 413 [7] this court issued its Order for Publication of Summons and publication was duly made in two newspapers of general circulation, The Los Angeles Daily Journal and the Denver Daily Journal.

Service was then made upon defendant CAPITAL both personally and by mail.

Plaintiff now claims that this procedure invests in this court quasi-in-rem jurisdiction over the defendant CAPITAL.

Rule 4(e) (2) Federal Rules of Civil Procedure provides in its pertinent part:

"Rule 4. *Process*

(a) * * *

(b) * * *

(c) * * *

(d) * * *

(e) *Same: Service Upon Party Not Inhabitant of or Found Within State.*

* * * Whenever a statute or rule of court of the state in which the district court is held provides * * * (2) for service upon a notice to him to appear and respond or defend in an action by reason of the attachment or garnishment or similar seizure of his property located within the state, service may in either case be made under the circumstances and in the manner prescribed in the statute or rule."

In interpreting Rule 4(e) as allowing quasi-in-rem jurisdiction to be exercised in federal courts the court in Great American Insurance Company v. Louis Lesser Enterprises, Inc. (1965) 8 Cir., 353 F.2d 997 says at page 1007:

"This seemingly overdue amendment now permits the institution of original attachment and garnishment proceedings in actions commenced in federal courts against nonresidents through the use of familiar state procedures by which property of the defendant is brought within the custody of the court and appropriate notice is given to the defendant.

6. California Code of Civil Procedure § 412 provides:

"§ 412. *Summons; service by publication; pre-requisites; order*

Where the person on whom service is to be made resides out of the State; or has departed from the State; or can not, after due diligence, be found within the State; or conceals himself to avoid the service of summons; or is a corporation having no officer or other person upon whom summons may be served, who, after due diligence, can be found within the State, and the fact appears by affidavit to the satisfaction of the court, or a judge thereof; and it also appears by such affidavit, or by the verified complaint on file, that a cause of action exists against the defendant in respect to whom the service is to be made, or that he is a necessary or proper party to the action; or when it appears by such affidavit, or by the complaint on file, that it is an action which relates to or the subject of which is real or personal property in this State, in which such person defendant or corporation defendant has or claims a lien or interest, actual or contingent, therein, or in which the relief demanded consists wholly or in part in excluding such person or corporation from any interest therein, such court, or judge, may make an order that the service be made by the publication of the summons."

7. California Code of Civil Procedure § 413 provides in its pertinent part:

"§ 413. *Summons; service by publication; order; mailing; personal service out of state; post office defined*

The order must direct the publication to be made in a newspaper, to be named and designated as most likely to give notice to the person to be served, and for such length of time as may be deemed reasonable, at least once each calendar week; but publication against a defendant residing out of the State, or absent therefrom, must be pursuant to Section 6065 of the Government Code, except in proceedings instituted pursuant to the provisions of Chapter 4, Title 3, Part 3, of this code. In case of publication, where the residence of a nonresident or absent defendant is known, the court, judge, or justice, must direct a copy of the summons and complaint to be forthwith deposited in the post office, directed to the person to be served, at his place of residence. When publication is ordered, personal service of a copy of the summons and complaint out of the State is equivalent to publication and deposit in the post office. Service is complete upon the making of such personal service or at the expiration of the time prescribed by the order for publication, whichever event shall first occur."

Under this rule, since the court obtains original quasi-in-rem jurisdiction by attachment and garnishment, *in personam* jurisdiction over the defendant is not necessary. However, the plaintiff must still satisfy both subject matter jurisdictional requirements and requirements of venue."

Plaintiff herein has complied with all of the requirements of California Code of Civil Procedure §§ 412, 413, making effective the service prerequisite to quasi-in-rem jurisdiction of defendant CAPITAL. We have dealt with the problem of subject matter jurisdiction and the requirements of venue and repetition here is therefore unnecessary.

## CAUSE OF ACTION PURSUANT TO 18 U.S.C.A. § 1014

■ Count Four of plaintiff's complaint attempts to ground a private cause of action upon 18 U.S.C.A. § 1014, a criminal statute. It provides in its pertinent part:

"§ 1014. *Loan and credit applications generally; renewals and discounts; crop insurance.*

Whoever knowingly makes any false statement or report, or wilfully overvalues any land, property or security, for the purpose of influencing in any way the action of \* \* \* a small business investment company, \* \* \* upon any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, or loan, or any charge or extension of any of the same, by renewal, deferment of action or otherwise \* \* \* shall be fined not more than $5,000 or imprisoned not more than two years, or both."

Plaintiff would have this court imply a private right from what appears to be a purely penal statute. Plaintiff's reliance upon the language in Reass v. United States (1938) 4 Cir., 99 F.2d

752 as to the purpose of the statute is entirely misplaced. The question before the court in the *Reass* case (supra) was simply one of venue of the offense. The language does not imply nor does it appear to have any reference to the creation of a private right in those organizations it is patently enacted to protect, Reass v. United States (supra).

The creation of a private right from a purely penal statute as opposed to a regulatory statute is clearly distinguishable. And that distinction is clear in the reading of the Note found in 77 Harvard Law Review 285, cited by counsel for plaintiff. It should be even clearer to counsel for plaintiff since he may well have been responsible for the comprehensive analysis of the subject matter therein.

The court finds nothing in the legislative history of this statute that suggests in any manner that Congress intended the creation of a private right of action. There is nothing in the language of the statute that suggests that the court should not apply the rule *expressio unuis est exclusio alterius*.

In any event the court can find little reason for implying a private right created by 18 U.S.C.A. § 1014 since "where effective state remedies for the conduct proscribed by the federal statute are available throughout the country, there is generally little reason to imply a federal cause of action." This court knows of no jurisdiction, federal or state, where an action upon a promissory note or for common law fraud (the theories of plaintiff herein) are not fully available to litigants.

## MOTION TO QUASH SERVICE OF SUMMONS AND DISMISS FIRST, FOURTH AND FIFTH COUNTS

(a) Pursuant to Rule 12(b) (2)[8]

The First Count, an action upon a promissory note, and the Fifth Count

---

8. Federal Rules of Civil Procedure Rule 12(b) (2) provides in its pertinent part:
"(b) How Presented. Every defense, in law or fact \* \* \* shall be asserted in the responsive pleading \* \* \*,

except that the following defenses may at the option of the pleader be made by motion: (1) \* \* \* (2) lack of jurisdiction over the person \* \* \*."

alleging common law fraud jurisdiction are grounded in diversity of citizenship.

Plaintiff claims jurisdiction over the person of defendant NEWMAN reasoning that since extraterritorial service of process is proper pursuant to the Securities Act violation alleged in the Second and Third Counts of its Complaint process on the First, Fourth and Fifth counts is valid by reason of the application of pendent jurisdiction to service of process. Plaintiff also claims quasi-in-rem jurisdiction over defendant NEWMAN on the First, Fourth and Fifth causes of action.

Quasi-in-rem jurisdiction of defendant NEWMAN can only be justified here if property of the defendant NEWMAN were attached within the State of California.

Writ of Attachment herein was issued January 11, 1967, to provide for the attachment of all property of the defendants JOSEPH E. NEWMAN and NEWMAN CAPITAL CORPORATION.

The return of service of the Writ of Attachment shows that on January 11, 1967, the writ was served personally on Louis Taubman in the United States Marshal's office. The return shows a receipt of $2,400 in partial satisfaction of the Writ of Attachment served.

An amended return of service of the Writ of Attachment was filed January 24, 1967, showing by letter from Mr. Taubman that he continued to have in his possession, (and subject to the Writ) a $60,000 debt on a promissory note, principal payable on July 11, 1968.

The letter of Mr. Taubman is interesting because it shows that the property held by him is as follows:

"1. On July 11, 1963, I executed a promissory note in the amount of $60,000 in favor of defendant NEWMAN CAPITAL CORPORATION, interest at 8% per annum payable semi-annually and principal payable on July 11, 1968.

2. Since the first interest payment for 1967 was due on January 11, 1967,

when I was served with the writ, I turned over the interest payment to your deputy.

3. I continue to have in my possession or under my control, the $60,000 debt on the promissory note."

There is in the record no return upon any Writ of Attachment showing property of defendant JOSEPH E. NEWMAN under attachment. Consequently, plaintiff can find no comfort in pressing quasi-in-rem jurisdiction of the defendant NEWMAN.

■ Although not argued by plaintiff it can be assumed that by its position it would claim that the alter ego theory asserted in plaintiff's complaint makes the property of the defendant corporation the property of defendant NEWMAN. This would be a complete distortion of the alter ego doctrine. That doctrine has been invoked when fairness and justice require that the property of individual stockholders be made subject to the debts of the corporation. To apply such a doctrine here would be asking the court to apply the doctrine in one manner, i. e., make the property of the corporation the property of a stockholder, for the purposes of obtaining jurisdiction of the person of the stockholder and then to reverse the procedure, i. e., make the action of the individual stockholder the action of the corporation for purposes of creating liability *in the name of the corporation*. Neither reason nor law compel such a gymnastic.

■ Plaintiff cites United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 as approval of the Supreme Court for a broad interpretation of pendent jurisdiction. But a reading of the *Gibbs* case (supra) makes it plainly evident that the Supreme Court did not extend the principle of pendent jurisdiction to bootstrap service of process not otherwise valid. The court in discussing Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148, as limiting pendent jurisdiction to state and federal claims which are "little more than the equivalent of different epithets to char-

acterize the same group of circumstances" at page 725, 86 S.Ct. at page 1138:

> "This limited approach is unnecessarily grudging. Pendent jurisdiction, in the sense of judicial *power,* exists whenever there is a claim 'arising under [the] Constitution, the Laws of the United States, and Treaties made or which shall be made, under their authority * * *,' U.S.Const. Art. III, § 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.' * * *

then follows the language important to our consideration here:

> "The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. Levering & Garrigues v. Morrin, 289 U.S. 103, 53 S.Ct. 549, 77 L.Ed. 1062.

at page 725, 86 S.Ct. at page 1138, the broadened approach is described as:

> "The state and federal claim must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole."

*Gibbs* (supra) though broadening the cause of action approach to pendent jurisdiction does not stand for the proposition that service of process to obtain personal jurisdiction can be bootstrapped as the plaintiff suggests here.

The view of Judge Weinfeld in Kane v. Central American Mining & Oil, Inc., D.C., 235 F.Supp. 559 at 568 is a most enlightened one. Personal jurisdiction over defendants in separately stated causes of action in one case should not depend upon a ritualistic method of service attendant to the nature of relief sought or the statute pursuant to which the particular count may be litigated in one court. How the defendant comes before the court to litigate all the disputes or theories of *one lawsuit* is unimportant. What is important is that a defendant is properly before a particular court under some valid service of process upon which the court has the power to proceed in some one of the disputes or theories alleged.

Assuming the court adopts this view of service of process, the doctrine of pendent jurisdiction lends little support to plaintiff in light of the determination made upon the Second and Third Counts herein.

(b) Pursuant to Rule 12(b) (5)[9] and Rule 4(f)[10]

The motion to dismiss for insufficiency of service of process raises no new issues not already discussed in this opinion.

Rule 4(f) insofar as it provides for service of process beyond the territorial limits of a state "when authorized by a statute of the United States or by these rules" would validate the ritualistic service of process made upon defendant

---

9. Federal Rules of Civil Procedure Rule 12(b) (5) provides in its pertinent part:
 "(b) How Presented. Every defense, in law or fact * * * shall be asserted in the responsive pleading * * *, except that the following defenses may at the option of the pleaders be made by motion: (1) * * * (2) * * * (3) * * * (4) * * * (5) insufficiency of service of process * * *."

10. Federal Rules of Civil Procedure Rule 4(f) provides:
 "Rule 4 Process
 (a) * * *

(b) * * *
(c) * * *
(d) * * *
(e) * * *
(f) Territorial Limits of Effective Service. All process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held, and, when a statute of the United States so provides, beyond the territorial limits of that state. A subpoena may be served within the territorial limits provided in Rule 45."

NEWMAN herein. However, no property of defendant NEWMAN has been attached in California nor have any of the acts necessary to invoke the venue provisions of 15 U.S.C.A. §§ 77v, 78aa occurred in California.

## TRANSFER OF ACTION

 The subject matter jurisdiction of the claims set forth in plaintiff's Amended Complaint For Money Judgment is vested in "the district courts of the United States."

We are here concerned basically with the venue aspects of 15 U.S.C.A. §§ 77v, 78aa and the attendant problems of where this dispute should most properly be tried.

Title 28 § 1406(a) Provides:

"§ 1406. *Cure or waiver of defects*

(a) The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

(b) * * *

(c) * * *"

In interpreting § 1406(a) in a factual situation closely analogous to our case the Supreme Court in Goldlawr, Inc. v. Heiman, 369 U.S. 463 at page 464, 82 S.Ct. 913 at page 915, 8 L.Ed.2d 39 says:

"Nothing in that language indicates that the operation of the section was intended to be limited to actions in which the transferring court has personal jurisdiction over the defendants. And we cannot agree that such a restrictive interpretation can be supported by its legislative history * * *. The problem which gave rise to the enactment of the section was that of avoiding the injustice which had often resulted to plaintiff from dismissal of their actions merely because they had made an erroneous guess with regard

to the existence of some elusive fact of the kind upon which venue provisions often turn."

The motions of defendants to dismiss and for summary judgment are denied without prejudice to the defendants to raise them before the District Court to which this action is being transferred pursuant to Title 28 U.S.C.A. § 1404 (a).[11]

In the interest of justice pursuant to Title 28 U.S.C.A. § 1404(a) the action is transferred to the District of Colorado for all further proceedings as to all parties.

---

11. Title 28 U.S.C.A. § 1404(a) provides:
"§ 1404. *Change of venue*
(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."