**SCOVILL MANUFACTURING COMPANY, a corporation, Plaintiff,**

**v.**

**DATELINE ELECTRIC CO., LTD., a corporation, Defendant.**

**No. 70 C 250.**

United States District Court,
N. D. Illinois,
E. D.

Dec. 7, 1970.

David P. List, Donald A. Mackay, Thomas M. Russell and Merle Royce, Leibman, Williams, Bennett, Baird & Minow, Chicago, Ill., for plaintiff.

Thomas Mulroy and John Conlon, Hopkins, Sutter, Owen, Mulroy & Davis, Chicago, Ill., Michael E. Phenner and Glen H. Kanwit, Hopkins, Sutter, Owen, Mulroy & Davis, Chicago, Ill., of counsel, for defendant.

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR RECONSIDERATION

ROBSON, Chief Judge.

The defendant, Dateline Electric Co., Ltd. (Dateline), moves this court to reconsider its order of April 27, 1970, denying Dateline's motion to dismiss Count IV of this complaint. After careful reconsideration of the briefs and applicable law, this court is of the opinion that its previous order should be vacated, and Count IV should be dismissed.

### THE POSTURE OF THE CASE

The plaintiff, Scovill Manufacturing Company (Scovill), is a Connecticut corporation with its principal place of business also in Connecticut.[1] Dateline is an English corporation with its principal place of business in England.

In the first three counts of this four-count complaint, Scovill seeks an injunction prohibiting alleged trademark infringement by Dateline of the plaintiff's trademarks "Scovill" and "Hamilton Beach." An accounting for any profits realized from the alleged infringement is also sought. These counts are based exclusively on the conduct of the defendant allegedly occurring in *January, 1970,*

---

1. Scovill brings this action on behalf of its Hamilton Beach Division.

at an industrial trade show *in Chicago, Illinois.*

In contrast, Count IV is based upon an alleged breach of a contract obligating Dateline to supply electric hair curler sets to Scovill. *It is undisputed that the contract in issue was not negotiated, executed, performed, or breached in Illinois.* The breach allegedly occurred in *October, 1969.* Damages in the amount of $650,000 are sought for lost anticipated profits and advertising expenses for the 1969 Christmas market because the electric hair curler sets delivered by Dateline allegedly did not meet the requirements of the contract. Additionally, Count IV asserts rights to damages in the amount of $10,000 for Scovill's alleged expense in the inspection, testing and repair of 15,000 sets accepted by Scovill from Dateline, and in the amount of $10,000 for alleged depreciation to certain molds and tooling *located in England.* Finally, Scovill asks this court to order that Dateline surrender possession of mold and tooling *located in England.* Scovill has a lawsuit presently pending *in England* for the return of the identical molds and tooling sought in Count IV.

It is uncontroverted that this court has *in personam* jurisdiction over Dateline by reason of the so-called Illinois Long-Arm Statute with respect to Counts I, II, and III, since those counts allege acts of trademark infringement occurring in Illinois. Ill.Rev.Stat.1969, ch. 110 § 17(1) (b). In the order under reconsideration, this court ruled that although it did not have *in personam* jurisdiction over Dateline with respect to Count IV, it did have pendent jurisdiction to hear that claim. Upon the defendant's motion for reconsideration, the court allowed the plaintiff to proceed with discovery on the issue of jurisdiction.

**LACK OF JURISDICTION OVER COUNT IV UNDER ILLINOIS LAW**

Scovill has orally requested this court to reconsider that part of its previous order ruling that the court lacks jurisdiction over Dateline with respect to Count IV under either the Illinois Long-Arm Statute or common law principles of "doing business" in Illinois. However, Scovill has failed to carry its burden on those contentions.

The breach of contract alleged in Count IV does not arise from any conduct by Dateline in Illinois. The contract was negotiated in November, 1968, by representatives of Scovill and Dateline's president, Hugh J. Sims-Hilditch, in Connecticut and New York; it was executed in Connecticut, and it was to be performed in England by the manufacture and shipment of electric hair curler sets f.o.b. England to New York. By its terms, the contract was to be governed by the laws of Connecticut, the state in which Scovill is incorporated and has its principal place of business. The contract did not contemplate performance in any manner in Illinois. The only conduct of the defendant in Illinois with respect to the contract was of a casual and fortuitous nature. While Sims-Hilditch attended Housewares Shows[2] in Chicago in January and July, 1969, he discussed matters concerning the design of the electric hair curler sets with representatives of Scovill, who were also in Chicago for the purpose of attending the Housewares Shows.

Section 17(1) (a) of the Illinois Long-Arm Statute provides in part, that the courts of Illinois have personal jurisdiction over a defendant with respect "to any cause of action arising from * * * [t]he transaction of any business within * * * [Illinois]." Ill.Rev.Stat.1969, ch. 110 § 17(1) (a). The applicable standard for determination of long-arm jurisdiction requires

2. The Housewares Show is a semi-annual industrial trade show held in Chicago, Illinois; there, manufacturers, American and foreign, exhibit and promote their household products.

that the cause of action be based upon conduct by the defendant in Illinois. National Television Sales Inc. v. Philadelphia Television Broadcasting Co., 284 F.Supp. 68, 69 (N.D.Ill.1968). The cause of action alleged in Count IV does not arise from any conduct of Dateline in Illinois. The fact that the parties discussed certain details not in issue here concerning the performance of the contract while their respective representatives were in Chicago attending a trade show indicates a wholly fortuitous contact with the State of Illinois and cannot, of itself, establish that the parties invoked the benefits and protections of Illinois law over their contract. Kaye-Martin v. Brooks, 267 F.2d 394 (7th Cir. 1959), cert. den. 361 U.S. 832, 80 S.Ct. 84, 4 L.Ed.2d 75 (1959). Scovill's reliance upon Hutter Northern Trust v. Door County Chamber of Commerce, 403 F.2d 481 (7th Cir. 1968), is misplaced. Unlike the defendant in *Hutter*, Dateline's presence at these trade shows was not primarily directed at solicitation of Illinois residents. Rather, both parties came to Chicago because the Housewares Shows happen to be held here. Since Count IV does not arise from any conduct of Dateline in Illinois, this court does not have personal jurisdiction over the defendant by reason of the Illinois Long-Arm Statute.

Scovill also contends that this court has personal jurisdiction over Dateline with respect to Count IV because the defendant has been "doing business" in Illinois. Dateline is not licensed to do business in Illinois, and does not have an office, employees, or agents in Illinois. The only contacts between Dateline and Illinois relied upon by the plaintiff are the attendance by Sims-Hilditch at the Housewares Shows held in Chicago in January and July of the years 1967, 1968, 1969 and 1970;[3] sales of Dateline's products to the English subsidiary of Montgomery Ward & Company which were discussed by Sims-Hilditch and representatives of Montgomery Ward & Company when Sims-Hilditch was in Chicago during the autumn of 1966;[4] sales by Dateline to A. F. Dormeyer Manufacturing Company, after preliminary solicitation by Sims-Hilditch at one of the Housewares Shows in 1968;[5] and a bank account at the Harris Trust and Savings Bank in Chicago for the last three years.[6]

The plaintiff has the burden of establishing sufficient presence of the defendant within Illinois to sustain a challenged service of process. *E.g.,* Klishewich v. Mediterranean Agencies, Inc., 42 F.R.D. 624 (E.D.N.Y.1966); Canvas Fabricators, Inc. v. William E.

---

3. At each of these Housewares Shows, Sims-Hilditch met with present and potential private label customers who were interested in the manufacture of electric hair curler sets for markets throughout the United States, as well as for foreign markets. However, no order was ever received by Dateline at any of these trade shows. Deposition of Sims-Hilditch, pp. 12–13, 17, 21, 28, 30 and 31.

4. Since 1968, Dateline has sold approximately $800,000 worth of electric hair curler sets to Montgomery Ward & Company without the formality of a written contract. Orders and payments for all of the sets sold by Dateline came from the London office of Montgomery Ward & Company. These sets were not shipped to Illinois, but rather were shipped f. o. b. an English port primarily to Baltimore, Maryland, or Oakland, California. Deposition of Sims-Hilditch, pp. 23–26.

5. A. F. Dormeyer Manufacturing Company is located in Chicago; Sims-Hilditch first met Dormeyer's representative at a Housewares Show. No order was received at that time, but after about two months of correspondence, an order was received in England. Thereafter, Sims-Hilditch met with representatives of Dormeyer at other Housewares Shows and may have visited Dormeyer on an occasion not related to a Housewares Show. The electric hair curler sets sold to Dormeyer were shipped f. o. b. London, England. Deposition of Sims-Hilditch, pp. 28–29, 98.

6. No funds are kept in the account; it is used to convert dollars received by Dateline into pounds sterling. Deposition of Sims-Hilditch, p. 140.

Hooper & Sons Co., 199 F.2d 485, 488 (7th Cir. 1952). At most, the activities of Dateline in Illinois constitute a solicitation of business not primarily directed to an Illinois market. This court cannot agree with the plaintiff's premise that Illinois has an interest in contracts solicited here between nonresidents who happen to converge upon Chicago to attend conventions or trade shows. The rationale behind the "doing business" theory mitigates against such a far-reaching result. Scovill's interpretation of the "doing business" principle would place an oppressive burden upon the courts of Illinois without conferring any corresponding benefit or protection upon the citizens of Illinois.

■ Dateline has never executed or performed a contract in Illinois, nor has it received an order in this forum. The only goods ever sent by Dateline to an Illinois customer were shipped f.o.b. London, England. A foreign corporation's activities in a state must be substantial, systematic, and continuous before it can be subjected to the jurisdiction of the courts of that state, in order to satisfy the requirements of the Due Process Clause. International Shoe Co. v. Washington, 326 U.S. 310, 317, 66 S. Ct. 154, 90 L.Ed. 95 (1945); Lindley v. St. Louis-San Francisco Railway Company, 407 F.2d 639 (7th Cir. 1968); Magnaflux Corporation v. Foerster, 223 F.Supp. 552, 562 (N.D.Ill.1963). Viewed in a light most favorable to the plaintiff, the defendant's contacts with Illinois reflect a "catalogue of irregular activity" insufficient to confer personal jurisdiction under the common law theory that the defendant was "doing business" in Illinois. Harvey v. Chemie Grunenthal G. m.b.H., 354 F.2d 428, 430 (2nd Cir. 1965).

## THE DOCTRINE OF PENDENT JURISDICTION IS INAPPLICABLE

■ Dateline asserts that this court's previous ruling is erroneous on the ground that extraterritorial service of process with respect to Counts I, II, and III under the Illinois Long-Arm Statute cannot provide *in personam* jurisdiction over Count IV under the doctrine of pendent jurisdiction. Upon re-examination of the applicable law and the particular factual context of this case, this court agrees.

■ Two threshold questions must be resolved before a federal court may exercise its discretion in favor of assuming pendent jurisdiction over a nonfederal claim. First, it must appear that the nonfederal cause of action rests on facts common to those giving rise to the federal claim. Secondly, assuming the requisite factual relationship, there must be a basis in law for extending personal jurisdiction over the defendant as to the pendent claim. Neither of these necessary elements is present in this case.

1. The Required Factual Relationship For Pendent Jurisdiction Has Not Been Shown

A "common nucleus of operative facts" between the federal and nonfederal claims must be shown before the exercise of pendent jurisdiction is proper. United Mine Workers of America v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Here, the conduct of the defendant complained of in Count IV is totally irrelevant to that set forth in the other three counts of the complaint. There are no common elements of proof in establishing a right of recovery for trademark infringement arising out of conduct occurring in Chicago in January, 1970, and damages incident to a breach of contract occurring in October, 1969, in England, Connecticut or New York. The only matter Count IV presents "in common" with the infringement claims is the undisputed fact that the same electric hair curler sets are involved. However, that fact is hardly an "operative" one giving rise to both contract and infringement claims. Whatever injury Scovill may have suffered by reason of infringement of its trademarks does not grow out of its asserted contract claims. The elements of proof are so completely disparate that

this court should not exercise pendent jurisdiction over Count IV under the principles set forth in United Mine Workers of America v. Gibbs, *supra.* See Larson v. Tony's Investments, 46 F. R.D. 612, 614 (M.D.Ala.1969); Powder Power Tool Corp. v. Powder Actuated Tool Co., 230 F.2d 409 (7th Cir. 1956); Lyon v. General Motors Corp., 200 F. Supp. 89 (N.D.Ill.1961).

2. No Basis For *In Personam* Jurisdiction Over The Defendant As To Count IV Has Been Shown

██ ██ As discussed above, there is no basis under Illinois law for *in personam* jurisdiction over Dateline as to Count IV. Jurisdiction under the Illinois Long-Arm Statute is expressly restricted to claims arising from a defendant's conduct in Illinois. Ill.Rev.Stat. 1969, ch. 110 § 17(3). It is clear that Dateline would not be amenable to service of process issued by the courts of Illinois for the claims asserted in Count IV. Equally clear is the fact that this court cannot obtain jurisdiction over Dateline unless service of process has been executed in conformity with Illinois law. Rule 4(d) (7), Federal Rules of Civil Procedure. In rendering its decision in United Mine Workers of America v. Gibbs, *supra,* the Supreme Court did not intend to extend pendent jurisdiction beyond the limits of the service of process relied upon to originally obtain jurisdiction over a defendant. An interpretation to the contrary amounts to "bootstrap" service of process not otherwise valid, and is violative of the letter and spirit of Rule 4(d). Olympic Capital Corp. v. Newman, 276 F.Supp. 646, 658 (C.D.Cal.1967); Kappus v. Western Hills Oil, 24 F.R.D. 123 (E.D. Wis.1959); Schwartz v. Bowman, 156 F.Supp. 361 (S.D.N.Y.1957). The doctrine of pendent jurisdiction applies only to jurisdiction of the subject matter, and not to jurisdiction of the person. Trussell v. United Underwriters, Ltd., 236 F.Supp. 801, 803 (D.Colo.1964). Scovill cites several cases where "pendent service of process" has been permitted. *E.g.,* Puma v. Marriott, 294 F. Supp. 1116 (D.Del.1969); Cooper v. North Jersey Trust Co. of Ridgewood, N. J., 226 F.Supp. 972 (S.D.N.Y.1964). *The original basis for the jurisdiction of the court in those cases was a federal statute authorizing nationwide service of process* and not a state long-arm statute. This court will not allow the statutorily prohibited use of the Illinois Long-Arm Statute to "bootstrap" Count IV to other claims for which jurisdiction has been properly obtained under that statute.

3. The Interests Of Judicial Economy And Convenience Of The Parties Are Not Served By The Exercise Of Pendent Jurisdiction.

██ ██ The doctrine of pendent jurisdiction is one of discretion and not of a plaintiff's right. United Mine Workers of America v. Gibbs, *supra.* Pendent jurisdiction should not be exercised if to do so would not serve the interests of judicial economy, convenience and fairness to the parties.

In all respects, Count IV is centered in places other than Illinois. The witnesses and evidence relating to Count IV have not been shown to be identical in any way to that likely to be offered into proof concerning the other counts. The claims asserted in Count IV appear to be of a substantially more complex nature than those of the other counts. Two separate trials within a trial would be the practical result. Moreover, the fact that Scovill has demonstrated its ability to pursue Dateline in England is significant. This court would invite chaos were it to permit litigation in this forum of those aspects of Count IV duplicative of a lawsuit pending in an English court and relating to industrial equipment located in England. Under all of these circumstances, this is not a proper case for the discretionary exercise of pendent jurisdiction.

ORDERS

It is therefore ordered that this court's Memorandum and Order entered

April 27, 1970, be, and it is hereby vacated.

It is further ordered that Count IV of the complaint be, and it is hereby dismissed.

The defendant is directed to answer Counts I, II, and III of the complaint within twenty (20) days of the entry of this order.